**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DAY, ) | |
| ) | CASE NO.    1:13-cv-00774 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE LESLEY WELLS |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff John Day ("Day") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On July 28, 2009, Day filed an application for POD and DIB alleging a disability onset date of March 7, 2009. His application was denied both initially and upon reconsideration.

On August 16, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Day, represented by counsel, and an impartial vocational expert ("VE") testified. On October 3, 2011, the ALJ found Day was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-nine at the time of his administrative hearing, Day is a "younger" person under social security regulations.  *See* 20 C.F.R. § 404.1563(c).  Day has a law degree and past relevant work as an attorney, faculty member/instructor, and salesperson.  (Tr. 23-24.)

*Relevant Hearing Testimony*

The ALJ posed a series of hypothetical questions to the VE, asking him to assume in each that the individual was the same age and had the same education, and work experience as Day.  (Tr. 56.)

In the first, the ALJ asked the VE to assume such a person is limited to simple, routine and repetitive tasks requiring no more than four steps in a work environment free of fast-paced production requirements; involving only simple work-related decisions with few if any workplace changes; and, no more than occasional interaction with the public and with coworkers.  (Tr. 56.)  The VE testified that such an individual would be unable to perform any of Day's past work, but gave the following examples of jobs that such an individual could still perform: garment sorter, laundry worker, and machine tender.  (Tr. 57.)

In the second, the ALJ asked the VE to assume the same limitations as in the first hypothetical, but added that such an individual would miss four days of work or more per month.  (Tr. 57-58.)  The VE testified that such an individual would be unemployable.  (Tr. 58.)  The VE also testified that an individual might be terminated for even one unscheduled absence per month, but would certainly be terminated for two.  (Tr. 57.)

In response to questions asked by Day's counsel, the VE testified that all the jobs identified had some production requirements but were not fast-paced.  (Tr. 58-59.)   The VE further indicated that an individual who fought with or swore at supervisors would be terminated. (Tr. 59.)  An individual who was only able to interact appropriately with a supervisor 60 percent of the time would not be able to maintain employment.  (Tr. 59-60.)  When asked if an individual who could only maintain attention and concentration 70 percent of the time was employable, the VE replied in the negative.  (Tr. 60.)  When asked if an individual who

could only relate predictably and appropriately 60 percent of the time was employable, the VE again responded in the negative. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Day was insured on his alleged disability onset date, March 7, 2009, and remained insured through the date of the ALJ's decision. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Day must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Day established a medically determinable, severe impairment, due to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

depression, generalized anxiety disorder, bipolar disorder, obsessive compulsive disorder, and post-traumatic stress disorder.  (Tr. 12.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 16.) Day was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with certain non-exertional limitations.  (Tr. 18, 23.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Day was not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Opinions from Medical Sources*

Day argues that the ALJ failed to properly evaluate the opinions of his treating sources, Michael Tran and Jyoti Aneja, M.D. as well as the opinion of his therapist, Kristen Liviskie. (ECF No. 14 at 14-18.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

5

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.  The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855;  *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Specifically, Day argues that the ALJ did not give good reasons for rejecting Dr. Tran's opinion that Day would miss more than four days of work per month.  (ECF No. 14 at 16.)  With respect to Dr. Aneja, Day does not identify which portions of her opinion the ALJ rejected.[3] *Id*. Nonetheless, Day mentions the following work-related limitations found by Dr. Aneja in the "Facts" section of his brief.  Day would miss work more than four days per month as a result of his impairments or treatment.  (Tr. 806.)  Day could function satisfactorily 60 percent of the time in his ability to interact with supervisors, to deal with ordinary work stress, behave in an emotionally stable manner, and to relate predictably in social situations.  (Tr. 804-805.)  In addition, Day could only function satisfactorily 70 percent of the time in his ability to maintain attention/concentration.  (Tr. 805.)

---

[3] The Court will not consider Day's "Addendum," which is not contemplated by the Court's Initial Order.  (ECF No. 4.)  Counsel's inclusion of six pages of single-spaced, small font medical facts after a 20 page brief essentially circumvents the page limitations set in the Court's Order.  *Id*.

The ALJ accorded "some weight" to the opinion of Dr. Tran, Day's psychiatrist, as the ALJ believed his assessment – that Day had "moderate impairments" in every area of basic work-related activities – "was consistent with treatment records documenting a generally cooperative claimant with no real deficits in attention, concentration, or memory."[4] (Tr. 22, 851-52.) The ALJ, however, gave "little weight" to the opinion of Day's other psychiatrist, Dr. Aneja, as he believed "her assessment [was] not consistent with the minimal findings on multiple mental status examinations." (Tr. 22-23.) The ALJ does not specifically reference Dr. Aneja's opinion that Day could function satisfactorily 60 percent of the time in his ability to interact with supervisors or only 70 percent of the time in his ability to maintain attention/concentration. (Tr. 22-23, 804-05.) By necessary inference, however, the ALJ must have rejected these opinions, as they were not incorporated into the RFC finding.[5]

The ALJ's decision is so unclear that it deprives this Court of the opportunity to conduct a meaningful review. The requirement under the regulations that ALJs give "good reasons" for the weight ascribed to treating sources exists partly to ensure that the ALJ applies the treating physician rule, and to permit meaningful review of the ALJ's application of the rule. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-545 (6th Cir. 2004) (*citing Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)). The ALJ claimed to ascribe some weight to Dr. Tran's limitations, that Day's ability to maintain attention and concentration was reduced by 17-32%, but also concluded there were "no real deficits in attention, concentration." (Tr. 22.) At the same time, the ALJ, without any meaningful explanation, implicitly rejected a seemingly similar opinion from Dr. Aneja that Day could function satisfactorily only 70 percent of the time in his ability to maintain attention/concentration. Dr. Aneja's opinion regarding Day's

---

[4] The form defines "moderate" as "an impairment that reduces the ability to function by 17-32% in an eight (8) hour day." (Tr. 851.)

[5] The RFC cannot reasonably be construed as incorporating such limitations. If it did, the ALJ would have failed to meet his burden at Step Five of the sequential process, which requires demonstrating that other work exists in the national economy that someone like Day could perform. *Abbott*, 905 F.2d at 923. The VE testified unequivocally that a person with either of the aforementioned limitations was unemployable. (Tr. 59-60.)

limitations as it relates to work-place stress and ability to interact with supervisors and the general public was also rejected without any explanation. The ALJ's unexplained conclusion – that Dr. Aneja's opinion was "not consistent with the minimal findings on multiple mental status examinations" – is the type of vague, conclusory, and ambiguous language the Sixth Circuit Court of Appeals found insufficient in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013). The *Gayheart* court noted that the conclusion that a treating source's opinions is "not well-supported by any objective findings" is ambiguous. *Id*. at 377. The Appeals Court observed that it "cannot determine whether the purported problem is that the opinions rely on findings that are not objective ... or that the findings are sufficiently objective but do not support the content of the opinions." *Id*. Furthermore, as in *Gayheart*, the ALJ did not identify or explain how the evidence was purportedly inconsistent with Dr. Aneja's opinions. In order for a district court to conduct a meaningful review, ALJs must explain their reasoning and conclusions.

Even if the ALJ is correct that mental status examination findings did not support the opinions of Dr. Aneja, a reviewing court can hardly be expected to review the entire medical record to fill in the gaps in an opinion. The Commissioner's attorneys frequently attempt to do precisely that in their briefings before this Court, and point to evidence or offer explanations never raised by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument). It would be even more improper for a reviewing court to furnish an explanation for the Commissioner's decision as it is this Court's function to *review* the decision and not to cure it. Yet another rationale for "'[t]he requirement of reason-giving exists, ... to let claimants

understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544-545 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). This additional rationale would be largely defeated if the first reasoned explanation were to come from a district court rather than the ALJ.

Accordingly, the Court finds the ALJ failed to provide "good reasons" for rejecting medical opinions of Dr. Tran and Dr. Aneja regarding Day's functional limitations. The Court, therefore, recommends remanding this matter to afford the ALJ an opportunity to sufficiently evaluate and explain the weight ascribed to the limitations assessed by these treating sources. As the Court is remanding this case for further proceedings, in the interests of judicial economy, the Court declines to consider Day's remaining assignments of error.[6]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White  
United States Magistrate Judge

Date: March 24, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[6] In his other assignment of error, Day challenges the accuracy of the RFC ascribed to him. This argument is based largely on the limitations contained in the opinions of Day's treating psychiatrists. As the RFC may well change in light of the recommended remand, the argument will not be considered at this time.